239 So.2d 29 (1970)
Alex VERICH, Edward J. DeBartolo D/B/a Edward J. DeBartolo & Associates and Edward J. DeBartolo Corp., Appellants,
v.
The FLORIDA STATE BOARD OF ARCHITECTURE, an Agency of the State of Florida, Appellee.
No. 69-40.
District Court of Appeal of Florida, Fourth District.
July 29, 1970.
Rehearing Denied September 18, 1970.
*30 Madison F. Pacetti, of Caldwell, Pacetti, Barrow & Salisbury, Palm Beach, for appellants.
Selig I. Goldin, of Goldin & Jones, Gainesville, and Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for appellee.
OWEN, Judge.
On complaint filed by the Florida State Board of Architecture appellant Alex Verich, a registered professional engineer, was found to be practicing architecture and enjoined from further practice thereof. We reverse that judgment in what we believe to be a case of first impression in this jurisdiction.
Mr. Verich was registered as a professional engineer in the State of Florida as provided under Chapter 471, F.S. He prepared or had prepared under his supervision, plans for a shopping center in West Palm Beach, Florida known as the Palm Beach Mall. These plans involved both architecture and engineering. At no time did Mr. Verich hold himself out to be an architect in any manner whatsoever nor did he enter into any contracts to perform architectural services, as he prepared the plans for the Edward J. DeBartolo Corporation for whom he was a fulltime engineer employee. The Palm Beach Mall is owned by Palm Beach Mall, Inc., a corporation wholly owned by the Edward J. DeBartolo Corporation.
Not unexpectedly, the plaintiff called as witnesses three architects all of whom testified that in their opinion the drawings, plans and specifications for the Palm Beach Mall constituted the work product of the practice of an architect. The defendant called as witnesses several registered professional engineers who expressed the opinion that the preparation of the plans for the Palm Beach Mall constituted the practice of engineering. The engineers testified that in their opinion the engineering services in preparing the necessary drawings and plans constituted approximately 75% of the work and that architecture was approximately 25% of the work. Both the engineers and architects agreed that the Palm Beach Mall was a building and that the plans for the same required the use or knowledge of mathematics and the principles of engineering. While we mention the foregoing conflicts in the testimony, our decision does not turn on a factual basis.
That there is an overlapping between the two professions appears to be readily recognized *31 by the language of F.S. Section 467.09(1) (a), F.S.A. which provides in substance that registered professional engineers are not prohibited from performing architectural services which are purely incidental to their engineering practice, and that registered architects are not prohibited from performing engineering services which are purely incidental to their architectural practice. The overlapping nature of the two professions is well recognized. See 82 A.L.R.2d 1026; 5 Am.Jur.2d, Architects, § 3; 6 C.J.S. Architects § 1.
F.S. Section 467.09(1) (a), F.S.A. defines the practice of architecture in a somewhat negative manner. After first providing for certain exemptions, the statute then defines the practice of architecture in the following terms:
"Otherwise, any person who shall be engaged in the planning or design for the erection, enlargement or alteration of buildings for others or furnishing architectural supervision of the construction thereof shall be deemed to be practicing architecture and be required to secure a certificate and all annual renewals thereof required by the laws of this state as a condition precedent to his so doing."
Stated in rather broad and general terms, the planning or design for the erection of buildings for others is the practice of architecture. The same statute expressly provides that no professional engineer shall practice architecture or use the designation "architect" or any term derived therefrom, but at the same time also expressly provides that nothing in the state law shall be held to prevent a registered professional engineer (or their employees or subordinates under their responsible supervising control) from performing architectural services which are purely incidental to their engineering practice. Standing alone, this statute appears to contain some contradictions in and of itself.
Chapter 471, F.S. pertains to professional engineers and by definition (Section 471.02(5)) the term "professional engineering" includes, among other things, any professional service requiring use or knowledge of mathematics and the principles of engineering rendered or offered to be rendered for public or private buildings and any consultation, investigation, plan, design, or responsible supervision of construction in any public or private buildings. Thus, it can be seen that the preparation of plans and design for and responsible supervision of the construction of buildings is by statute defined as the practice of professional engineering.
If the planning and design of a building and the furnishing of supervision of its construction are functions which are encompassed solely within the practice of architecture, then professional engineers are prohibited from engaging in such functions unless incidental to their engineering practice. But paradoxically, the practice of professional engineering expressly includes the planning and design of buildings and the supervision of their construction. Thus, the apparent conflict can only be resolved by concluding that the statutes mean a registered architect can plan and design and supervise construction of a building as the practice of architecture and a registered professional engineer can plan and design and supervise construction of a building as a professional engineer. Of course, the professional engineer cannot represent himself as being an architect nor can the architect represent himself as being a professional engineer.
Appellee contends that the statutory definition of "professional engineering" by necessary implication has reference to "buildings" of an industrial nature designed primarily to house machinery and equipment rather than designed primarily for habitation or occupancy by humans. Admittedly, such a qualification as to the type of buildings upon which professional *32 engineers were authorized to plan and supervise construction would help preserve a line of demarcation between the two professions consistent with generally accepted concepts. We feel however that had it been the legislative intent to thus limit or restrict to industrial buildings the type of buildings which professional engineers were authorized to design and supervise construction upon, such qualifications or restrictions would have been explicitly contained in the statute. We are concerned here with statutory construction and not historical differences of these two professions.
The final judgment is reversed and the cause remanded for entry of a judgment favorable to appellant.
REED, J., concurs.
WALDEN, J., dissents, without opinion.