38450. GEORGIA STATE BOARD FOR EXAMINATION, QUALIFICATION AND REGISTRATION OF ARCHITECTS et al. v. ARNOLD.
38460. GEORGIA STATE BOARD FOR EXAMINATION, QUALIFICATION AND REGISTRATION OF ARCHITECTS et al. v. BUSH.

JORDAN, Chief Justice.

Permanent injunctions against the practice of architecture by H. R. (Ricky) Arnold and Frank Bush were sought by the State Board for Examination, Qualification and Registration of Architects (the Board). The trial court denied all relief sought by the Board in both cases and, on grounds of vagueness and overbreadth, declared unconstitutional Code Ann. §§ 84-301 and 84-321, defining the practice of architecture.

The Board appeals. We affirm on other than constitutional

grounds. Neither Arnold nor Bush has been proven to have been engaged in the "practice of architecture" as defined in Code Ann. § 84-301 and 84-321. Hence, we do not reach the constitutional challenges.

These are the facts in Case No. 38450.:

Davison Rubber Company employed Warren Scott Contracting Company (Scott) to construct a one-story metal warehouse in Sumter County. Scott, the general contractor, hired Arnold as subcontractor to erect the metal walls and roof.

Arnold was not employed to, and did not, participate in the site planning or preparation, or in the planning or construction of the foundation, the electrical, plumbing or heating systems, the finish or interior work, or in any other aspect of the project, except the erection of the metal walls and roof.

Scott gave Arnold specifications for the size requirements of the metal frame walls and roof of the warehouse. Arnold sent a purchase order for metal components meeting those specifications to America Buildings Company (America), a manufacturer of metal building components.

A professional engineer, licensed in the State of Georgia and employed by America, prepared engineering drawings for construction of the metal walls and roof of the warehouse, and those drawings were sent to Arnold along with the metal components necessary to construct the walls and roof.

Scott attached the engineering drawings to the building permit application filed with the City of Americus. Arnold's name was listed on the drawings as their owner but not as the engineer or architect who had prepared them.

Utilizing these engineering drawings, Arnold erected the metal walls and roof of the warehouse. Arnold did not participate in any amendment to the drawings or in any local adaptation of the designs. He did not hold himself out as being an architect. He is not licensed by the Board to practice architecture.

The facts in Case No. 38460 are these:

Frank Bush is not licensed by the Board to practice architecture. He does not hold himself out to be an architect. He never has prepared architectural drawings on a fee basis or for the general public.

Frank Bush works as an employee of Paul Bush Real Estate, Inc., preparing drawings for buildings to be built by that company. All of his drawings call for construction in accordance with proven methods common to the locality. In the event of any unusual matter, an engineer or architect is consulted. Whenever his employer constructs a building for another party, the drawings are prepared by

licensed architects, not by Frank Bush.

Frank Bush prepared the drawings for a $160,000 condominium building owned by Paul Bush Realty, Inc., individual units of which were to be sold to others. He also prepared the drawings for a $150,000 office building to be owned by Paul Bush Realty, Inc., and leased to others. He signed each page of the drawings for each of these two buildings as the person who prepared the drawings, but he did not hold himself out to be an architect.

The "practice of architecture," for purposes of our laws governing the licensing of architects and the restraining of unlawful practice of architecture by non-licensed persons, "consists of rendering or offering to render service, hereinafter described, in connection with the design of any building or group of buildings or the design of alterations or additions thereto. The services referred to hereinabove include consultation, planning, analyses, preliminary studies, designs, drawings and specifications, architectural administration of construction contracts and any other function in connection with such services. A 'building' . . . [for these purposes] is any structure consisting of foundation, floors, walls, columns, girders, beams and roof or a combination of any number of these parts, with or without other parts or appurtenances." Code Ann. § 84-301.

Code Ann. § 84-321 exempts certain activities which otherwise would be within the broad ambit of Code Ann. § 84-301, as follows: "Nothing contained . . . [herein] shall prevent draftsmen, students, project representatives, administrators and other employees of those lawfully practicing as registered architects under . . . [these provisions] from acting under the instructions, control or direction of their employers. No person shall be required to register as an architect in order to make plans and specifications for or supervise the erection, enlargement, or alteration of any building upon any farm for the use of any farmer, or any one or two-family residence buildings, regardless of cost, or any domestic out-building appurtenant to any such one or two-family residences regardless of cost, or of any other type building costing less than $50,000 (except schools, auditoriums, or other buildings intended for the mass assemblage of people or group housing projects whether they be single, double, or multi-family). Nor shall anything in . . . [these provisions] be held to prevent registered professional engineers or their employees or subordinates under their responsible supervising control from performing architectural services which are purely incidental to their engineering practice: Provided, however, that registered architects or their employees or subordinates under their responsible supervising control may perform engineering services which are purely incidental to their architectural practice. However,

no professional engineer shall practice architecture or use the designation 'architect' or any term derived therefrom unless registered under . . . [these provisions] and no architect shall practice professional engineering or use the term 'engineer' or any term derived therefrom unless he also is qualified and registered as such engineer as provided by law. Otherwise any person who shall be engaged in the planning or design for the erection, enlargement or alteration of any building or group of buildings for others, or furnishing architectural administration of construction contracts thereof shall be deemed to be practicing architecture and be required to register under . . . [these provisions] and to secure all renewals of such registration as conditions precedent to his so doing. The term 'building' . . . shall be as defined under section 84-301."

1. The services performed by Arnold, that is, the erection of the metal walls and metal roof, are those of a specialty subcontractor, not of an architect. A licensed engineer was utilized to prepare the technical drawings in accordance with which metal components were erected by Arnold. We affirm in Case No. 38450 the judgment denying injunctive relief because Arnold was not engaged in the practice of architecture within the meaning of Code Ann. § 84-301, et seq.

2. Frank Bush did not perform the "services" of an architect "for others" within the contemplation of Code Ann. §§ 84-301 and 84-321 because his drawings were of a sort that could be prepared by any contractor or owner of buildings who is conversant with proven construction methods common to the locality, and because Frank Bush's services were performed exclusively "in-house" for his employer rather than for the general public. To rule otherwise would be to classify as architectural practice the sketches and drawings of carpenters, electricians, plumbers, heating and air-conditioning contractors, and the other skilled tradesmen and craftsmen who, for reasons sufficient to themselves, have committed to paper the familiar and proven construction techniques of their trades or crafts, and to preclude corporations from hiring their own "in-house" construction staffs. We affirm the judgment in Case No. 38460 because Frank Bush was not engaged in the practice of architecture within the meaning of Code Ann. § 84-301 et seq.

3. The purpose of the licensing law is "to safeguard life and property," and this goal is to be accomplished by allowing no one "to practice *architecture* unless he has the qualifications and competency required by . . . [these provisions]." (Emphasis supplied.) Code Ann. § 84-321. The purpose of the licensing law therefore is to protect persons and property by assuring, subject to limited exceptions, that a licensed (hence, presumably qualified) architect

will be retained to perform professional architectural "services." Code Ann. §§ 84-301 and 84-321. The licensing law gives no assurance to architects that they will be retained on all building construction projects, and does not deny to builders, tradesmen and craftsmen the right to commit to paper the "tried and true" construction techniques of their businesses, trades or crafts.

*Judgments affirmed. All the Justices concur, except, Hill, P. J., who dissents in Case No. 38460, and Marshall, J., who is disqualified.*

DECIDED JUNE 30, 1982.

*Michael J. Bowers, Attorney General, Gary R. Hurst, Assistant Attorney General,* for appellants.

*Ellis, Easterlin & Peagler, Ben F. Easterlin IV,* for appellees.

HILL, Presiding Justice, dissenting.

I dissent in Case No. 38460. As an employee of Paul Bush Realty, Frank Bush prepared the drawings for a $160,000 condominium to be sold to others and a $150,000 office building to be leased to others. Frank Bush is not a licensed architect. His activities come within the definition of the "practice of architecture." Code Ann. § 84-301.

Code Ann. § 84-321 exempts certain activities which might otherwise come within the definition of the practice of architecture. After specifying the exemptions, Code Ann. § 84-321 provides: "Otherwise any person who shall be engaged in the planning or design for the erection, enlargement or alteration of any building or group of buildings *for others* . . . shall be deemed to be practicing architecture . . . ." (Emphasis supplied.)

The majority takes the qualification relating to exemptions and makes it the definition of the practice of architecture. Besides being contrary to the rules of statutory construction, the result will be the collapse, or consumption by fire, of a building and death of its occupants because the majority opinion permits unlicensed carpenters and brick masons working "in-house" to design large condominiums, retirement homes and hotels for contractors, real estate companies and speculators anxious to cut costs. When this disaster occurs, I want it to be recorded that I dissent.