Arthur E. McKEOWN t/d/b/a Arthur E. McKeown Construction, Petitioner,

v.

## STATE ARCHITECTS LICENSURE BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 1997.

Decided Jan. 15, 1998.

Order Clarifying Decision Feb. 4, 1998.

Loudon L. Campbell, Harrisburg, for petitioner.

Beth Sender Michlovitz, Harrisburg, for respondent.

Before COLINS, President Judge, FLAHERTY, J., and NARICK, Senior Judge.

COLINS, President Judge.

Arthur McKeown (McKeown) petitions for review of the order of the Architects Licensure Board (Board) imposing a $1,000 civil penalty for violation of Section 18 of the Architects Licensure Law (Law),[1] which prohibits any unauthorized offer to engage in the practice of architecture.

McKeown, a construction and remodeling contractor, distributed advertisements to the doors of residents. The ad is reproduced here.

Free Customized Designs and Free Estimate
For Additions or Remodeling

ARE YOU LOOKING FOR:
• Additions to your home?
• Basement Remodeling?
• Cathedral ceilings?
• Attic Conversions?
CALL
McKEOWN CONSTRUCTION
TODAY
FOR A NO-OBLIGATION DESIGN AND ESTIMATE!
431-2353

FREE DESIGN CERTIFICATE
Receive a FREE design of your dream addition, with NO OBLIGATION to buy from us. Call Mckeown today for an appointment 431-2353
Guaranteed, top quality work since 1977
813 West Chester Pike, West Chester, PA

(Exhibit 1 to the Board's Order to Show Cause.) A copy of the ad was left at the door of an architect, who, perceiving the inherent threat to the profession, filed a com-

---

1. Act of December 14, 1982, P.L. 1227, *as amended*, 63 P.S. § 34.18.

plaint with the Board. The Board issued an order to show cause alleging that McKeown violated Section 18(a) of the Law, 63 P.S. § 34.18(a), by offering to engage in the practice of architecture. McKeown is not a licensed architect.

At an administrative hearing, McKeown acknowledged distributing the ad and acknowledged that the services of an architect are required for all construction that involves structural modifications, including additions to homes or other buildings. (Notes of Testimony, p. 18.) For all jobs that require an architect, McKeown testified that he and the customer first prepare a rough sketch, which is intended to be the free design offered in the ad. McKeown referred to these types of rough sketches as shop drawings.

The hearing examiner questioned McKeown extensively to ascertain whether his intent was to include an actual architect's drawing as the free design offered in the ad. (Notes of Testimony, p. 25.) When asked whether he would feel obligated to provide an architect's drawing in the event a customer demanded more than a rough sketch, McKeown said he would refer the customer to an architect. If the customer insisted that the ad promised an architect's drawing, McKeown said he would credit the customer for the cost of the drawing if the customer signed a contract with McKeown Construction. (Notes of Testimony, p. 26.)

Although the hearing examiner's proposed order found no violation of the Law,[2] the Board concluded that McKeown offered to engage in the practice of architecture in violation of the Law. The Board also concluded that the ad did not fall within the Law's exception for "shop drawings," which the Board defined as drawings based on architectural drawings and intended to facilitate the implementation of the design plan. The Board imposed a fine of $1,000.

Our review in an appeal from the Architects Licensure Board is limited to determining whether the Board erred as matter of law and whether its findings are supported by substantial competent evidence. 2 Pa.C.S. § 704. The hearing examiner, as designee of the Board, is charged only with conducting the hearing and reporting its findings and recommendations to the Board, which may adopt the findings or may "make additional or other findings of fact on the basis of all the legally probative evidence in the record and enter its conclusions of law and order in accordance with the requirements for the issuance of an adjudication under [the administrative law of] Title 2." Section 21(c) of the Law, 63 P.S. § 34.21(c). Absent any statutory requirement that the Board is bound by the decision of the hearing examiner, the Board is free to make its own determination and findings subject to review by this Court.[3]

McKeown's petition raises the following issues: whether the Board erred in finding the ad to be an offer to engage in the unauthorized practice of architecture; whether the Board erred in its interpretation of the term "shop drawings"; and whether the Board abused its discretion by imposing an excessive and unreasonable civil penalty.

Section 18(a) of the Law provides, in pertinent part,

no individual shall engage in the practice, or offer to engage in the practice of architecture in this State, ... unless such individual holds a currently valid certificate pursuant to this act.

63 P.S. § 34.18(a). Section 3 of the Law defines "practice of architecture" as

[t]he rendering or offering to render certain services, hereinafter described, in connection with the design and construction of a structure.... The services referred to in the previous sentence include planning, providing preliminary studies,

---

**2.** The hearing examiner noted that the ad did not state that McKeown would provide an architectural design; it said only that one would be provided at no obligation. (Notes of Testimony, p. 34.) The hearing examiner found that the ad did not imply that McKeown was an architect, that nothing in the ad could mislead a customer to expect anything but a sketch, and even if the

ad did promise an architect's sketch, it did not promise that McKeown would prepare it. (Proposed Adjudication and Order, p. 7.)

**3.** *See Fitz v. Intermediate Unit # 29*, 43 Pa. Cmwlth. 370, 403 A.2d 138 (1979).

designs, drawings, specifications, and other design documents, construction management and administration of construction contracts.

63 P.S. § 34.3.

■ The Board's conclusion that McKeown violated the Law essentially means that the ad on its face constitutes a per se offer to engage in the practice of architecture. We cannot agree. Although Law defines the practice of architecture in such a way that almost any offer of design services would constitute a violation, a per se application of the definition would result in the imposition of penalties on persons who never contemplated an offer to provide architectural design documents. In our view, a determination of whether an ad constitutes an unauthorized offer to engage in the practice of architecture must consider what services the offeror actually meant to offer. To do otherwise would penalize one who innocently offers services outside the practice of architecture, but who comes within the Law's prohibitions through nothing more than an unfortunate choice of words.

Under the Board's analysis, the ad in question constitutes a per se prohibited offer to engage in architecture simply because it uses the word "design" in connection with building "additions." In our view, the terms of the ad are susceptible to more than one interpretation. In fact, the ad's "free design" more likely refers to a rough sketch for the simple reason that a small construction contractor could not afford to offer free architectural drawings, which presumably require some professional expertise and some commitment of time. Furthermore, McKeown's definition of "additions" does not necessarily dovetail with the Law's meaning [4] and may not necessarily involve a building's structure.

■ Given the Board's findings, which acknowledge that McKeown's practice is to hire an architect for any construction job with structural implications, the evidence of record does not support a conclusion that

McKeown offered to engage in the practice of architecture. On the contrary, the Board found that McKeown's practice as a building contractor was to prepare preliminary sketches and to engage an architect once the customer contracted with McKeown Construction to do the work. (Board Finding of Fact No. 4.) That finding is supported by McKeown's testimony, and the record contains no evidence to the contrary.

■ Section 15(3) of the Law permits "[t]he preparation of any shop drawings ... by persons customarily engaged in construction work." 63 P.S. § 34.15(3). After it interpreted "shop drawings" as being drawings based on architectural drawings and intended to facilitate the implementation of the design plan, the Board concluded that McKeown's ad did not fall within the Law's exception. While we recognize that the term has no ordinary meaning outside the context of the engineering, architectural, or construction fields, we cannot accept the Board's definition of the term as the exclusive definition. Neither party submitted expert testimony or any other evidence on the issue, and the Board erred in failing to give any weight to McKeown's understanding of the term, even though McKeown has worked in the construction industry for over ten years. McKeown's understanding of the term bears directly on the issue of what services the ad meant to offer.

■ Finally, we agree with McKeown's contention that the Board erred in imposing a $1,000 civil penalty under Section 20(d) of the Law, 63 P.S. § 34.20(d). Section 20(d), in pertinent part, authorizes the Board to impose penalties on any current licensee who violates any provision of this act or on "any person who practices the profession of an architect without being properly licensed." 63 P.S. § 34.20(d). McKeown is neither a current licensee nor a person who practices the profession without a license.

For the reasons stated above, we reverse the order of the Board.

4. The Law does not define "additions."

### ORDER

**AND NOW,** this 15th day of January, 1998, the order of the Architects Licensure Board in the above-captioned matter is reversed.

### ORDER

AND NOW, this 4th day of February 1998, Respondent's motion for clarification is granted. In dicta, this Court's decision of January 15, 1998 in the above-captioned matter addresses the Board's error in imposing a $1,000 civil penalty under Section 20(d) of the Law, 63 P.S. § 34.20(d). To the extent that that portion of the decision requires clarification, it construes subsection (d) as applicable only to current licensees and to any person who engages in the practice of architecture; that subsection does not provide for imposition of such a penalty on any person who merely offers to engage in the practice of architecture. The Court suggests that a more appropriate penalty would have been a $500 penalty, as provided in subsection (a) of the Law, which does mention "offers to engage in the practice of architecture," even though subsection (a) is also inapplicable in this matter in that McKeown was not convicted of a summary offense. The decision is therefore clarified to remove any doubt that the Court may have suggested that subsection (a) was applicable to this administrative matter.