**942**

B. Dale SANVILLE, Petitioner,

v.

COMMONWEALTH of Pennsylvania, BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 7, 2000.

Decided June 5, 2000.

John C. Farrell, Philadelphia, for petitioner.

Steven Wennberg, Harrisburg, for respondent.

Before DOYLE, President Judge, and KELLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

B. Dale Sanville (Sanville) petitions for review of the May 24, 1999, decision of the State Registration Board for Professional Engineers, Land Surveyors and Geologists (Board) which assessed a civil penalty in the amount of $2000.00 and ordered Sanville to cease and desist from offering to provide or providing design services in regard to sprinkler systems, or engineering services or engineered working drawings for fire protection systems. For the reasons set forth herein, we reverse.

Sanville is a 62 year old man who has been designing sprinkler systems for 43 years. He is a member of the National Fire Protection Association (NFPA) and the American Fire Sprinkler Association. Sanville has designed sprinklers since 1955. Notes of Testimony, December 16, 1998 (N.T.), at 29–30; Reproduced Record (R.R.) at 153a–154a. In 1978 he started his own sprinkler company, Sprinklers, Inc. He provides the public with sprinkler design services and material estimates. N.T. at 33; R.R. at 157a. Sanville contracts his services and the design contract states whether an engineer seal, stamp, or approval is required. Absent a contractual specification that an engineer be involved, Sanville performs the work himself. N.T. at 37–41; R.R. at 161a–165a. Sanville had an engineer on staff from 1985 through 1988, and now hires independent contractors as needed. N.T. at 69, 82; R.R. at 161a, 206a. Sanville designs sprinkler systems pursuant to NFPA standards and does not perform hydraulic calculations, as they are determined from computer programs. N.T. at 69–70, 78; R.R. at 193a–194a, 202a. Once Sanville creates the design and purchases the materials, the sprinkler contractor installs the sprinkler system. Sanville has worked with and has had his work approved by fire marshalls, property owners, engineers, contractors, architects, and insurance companies. N.T. at 60; R.R. at 184a.

On August 8, 1994, Sanville sent out 200 to 300 solicitation letters. The Letter stated in pertinent part:

Our company has been in business since 1978 providing dependable professional fire protection services, backed by my personal experience of 39 years in the design business. We are members of the National Fire Protection Association and the American Fire Sprinkler Association.

Over the years I **have been involved with**: preliminary bid drawings, specification preparation, preliminary material, engineering & installation estimates, initial consultation on system types, final engineered working drawings, shop fabrication, supervision of installations, stocklist of materials required, and ordering of materials.

We are now concentrating our efforts on preparing sprinkler specifications, bid drawings, and cost estimates for companies like yours. Our costs are determined on an individual project basis, after review of project information supplied by you. Our specialized experience in this field can help you in completing the bid package needed in a professional and timely manner.

Sanville Solicitation Letter, August 8, 1994, at 1; R.R. at 245a. (emphasis added). Sanville's business card states in pertinent part, "Sprinklers, Inc. Design and Consulting."

On July 27, 1998, the prosecuting attorney for Respondent Bureau of Professional and Occupational Affairs issued Sanville a two-count order to show cause, charging that Sanville's distribution of the solicitation letter to EBL Fire Engineering and his circulation of the business card constituted "an offer to practice engineering" in violation of Section 3 of the Engineer, Land Surveyor and Geologist Registration Law (Engineer Law).[1] Section 3 of the Engineer Law provides in pertinent part:

Practice of engineering, land surveying or geology without a licensure or registration

(a) In order to safeguard life, health or property and to promote the general welfare, it is unlawful for any person to practice or offer to practice engineering in this Commonwealth, unless he is licensed and registered under the laws of this Commonwealth as a professional engineer....

(b) A person shall be construed to practice or offer to practice engineering...who practices any branch of the profession of engineering...; or who,

---

1. Act of May 23, 1945, P.L. 913, as amended, 63 P.S. § 150.

buy verbal claim, sign, advertisement, letterhead, card, or in any other way represents himself to be an engineer...or through the use of some other title implies that he is an engineer...; or who holds himself out as being able to perform, or who does perform any engineering...service or work or any other service designated by the practitioner or recognized as engineering....

63 P.S. § 150. Sanville filed an answer with new matter in which he admitted the factual allegations of the order to show cause but denied he had violated the Engineer Law.

On December 16, 1998, a hearing was held before the Board, at which Sanville's answer, the letter and business card were admitted into evidence. The Commonwealth offered no testimony. Sanville testified on his own behalf and also offered the deposition and written report of James F. Valentin, Jr. a non-engineer who designs fire sprinkler systems. Sanville also offered letters and curricula vitae from 13 individuals who are familiar with Sanville's work, two of whom are licensed engineers. The Board made the following relevant findings of fact:

7. Respondent also used certain licensed engineers to review, modify and approve plans on occasion. (N.T. 12/16/98, page 38, line 9).

10. In the August 8, 1994, letter, Respondent stated that he provided professional fire protection services and prepared specifications, prepared engineering and installation estimates, consulted on types of systems, prepared final engineered work drawings and fabricated and supervised fire protection installation. (Exhibit C-1).

17. Respondent's design of sprinkler systems includes hydraulic calculations of the amount of water needed in the system and the size of the pipes required as a result of those calculations. (N.T. 12/16/98, pages 69–70).

Board Decision, May 24, 1999, (Board Decision) at 3–4. The Board concluded that:

3. The services offered by Respondent in the letter and business card constitute the practice of engineering as defined in Section 149(a)(1) of the Act, 63 P.S. § 149(a)(1).

4. The services offered by the Respondent do not fall into any exception to the statutory definition of the practice of engineering, such as maintenance, which would not require a license. 63 P.S. § 149(a)(1), (2).

Board Decision at 6. The Board found Sanville violated Section 3 of the Engineering Law. Sanville petitioned our Court for review. On July 15, 1999, Judge Rodgers granted supersedeas pending the outcome of this appeal.

Sanville contends that the Board erred in concluding that he violated the Engineer Law, and that this finding was not supported by substantial evidence; that the Board erred in not qualifying Sanville's witness as an expert; and that the Board exceeded its scope of review, thus violating Sanville's due process rights by directing Sanville to cease and desist from performing sprinkler design services.

Section 2(a)(1) of the Engineer Law defines the practice of engineering as:

"Practice of engineering" shall mean the application of the mathematical and physical sciences for the design of public or private buildings, structures, machines, equipment, processes, works or engineering systems, and the consultation, investigation, evaluation, engineering surveys, construction management, planning and inspection in connection therewith, the performance of the foregoing acts and services being prohibited to persons who are not licensed under this act as professional engineers unless exempt under other provisions of this act.

63 P.S. § 149(a)(1). Section 2(a)(2–4) and 5 of the Engineer Law, 63 P.S. §§ 149(a)(2–4) and 150, set forth numerous categories of engineering activities that do

not require licensure. Section 2(a)(2) provides in pertinent part:

The term "Practice of Engineering" shall also mean and include related acts and services that may be performed by other qualified persons, including but not limited to, municipal planning, incidental landscape architecture, teaching, construction, maintenance and research but licensure under this act to engage in or perform any such related acts and services shall not be required.

63 P.S. § 149(a)(2). 63 P.S. § 152 provides in pertinent part:

Except as specifically provided in this section, this act shall not be construed to require licensure and registration in the following cases:

(a) The practice of engineering, land surveying or geology by any person who acts under the supervision of a professional engineer, professional land surveyor or geologist, respectively, or by an employee of a person lawfully engaged in the practice of engineering, land surveying or geology and who, in either event, does not assume responsible charge of design or supervisions.

63 P.S. § 152(a).

■■■ In determining whether the letter constitutes an unauthorized offer to engage in the practice of engineering we must consider what services the offerer actually meant to offer. *McKeown v. State Architects Licensure Board*, 705 A.2d 524 (Pa.Cmwlth.1998). Simply because Sanville used the words "engineer" and "design" in his letter and business card, it does not follow that he has offered to engage in the practice of engineering. The terms are susceptible to more than one interpretation. The Board erred in failing to give any weight to Sanville's testimony of his understanding of how the terms "engineering" and "design"

bear on the services the letter and card meant to offer. Sanville testified that the terms "engineer" and "design" were once interchangeable. That engineering was a generic term, and he was only offering design services; and if engineering was required, he sought the advice of an engineer.

■■ Given the Board's findings, which acknowledge that Sanville's practice is to hire an engineer when required for a job, the evidence of record does not support a conclusion that Sanville offered to engage in the practice of engineering. On the contrary, the Board found that Sanville's practice was to act under the supervision of a professional engineer when necessary, having contracted with two engineers. That finding is supported by Sanville's testimony, and the record contains no evidence to the contrary. The August 8, 1994, letter and Sanville's business card are void of any inference to the practice of engineering by Sanville. The record taken as a whole indicates that Sanville was not practicing engineering without a license. The testimony does not support a finding that Sanville violated Section 149(a)(1) of the Act, 63 P.S. § 149(a)(1). Accordingly, we reverse.

### ORDER

AND NOW, this 5[th]day of June, 2000, the order of the State Registration Board for Professional Engineers, Land Surveyors and Geologists, in the above captioned matter, is hereby reversed.