## Rev. George Fitz and Mrs. Patty Fitz, Petitioners v. Intermediate Unit No. 29 and Blue Mountain School District, Respondents.

Argued February 8, 1979, before Judges WILKIN-
SON, JR., MENCER and CRAIG, sitting as a panel of three.

*William R. Mosolino,* for petitioners.

*W. Alan Williams,* with him *Lewis & Williams* and
*William D. Hutchinson,* for respondents.

OPINION BY JUDGE MENCER, June 15, 1979:

George Fitz and his wife Patty (petitioners), par-
ents of Peter Fitz, a 17-year-old hearing-impaired
child, have appealed an order of the Secretary of Edu-
cation (Secretary) denying approval for the educa-

tional placement of Peter in the Pennsylvania School for the Deaf (PSD). We affirm.

In October of 1975, Peter Fitz was enrolled by petitioners in the special education classes of Intermediate Unit No. 29 (IU), which services the Blue Mountain School District (District) in which petitioners reside. On January 17, 1977, petitioners, being dissatisfied with Peter's progress at the IU, withdrew him and enrolled him in the residential program at PSD. Petitioners subsequently requested the District to approve Peter's placement at PSD and recommend tuition reimbursement, pursuant to Section 1376 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, Art. XIII, *as amended*, 24 P.S. §13-1376.[1] After a program placement conference among

---

[1] Section 1376 reads, in pertinent part:

(a) When any child between the ages of six (6) and twenty-one (21) years of age resident in this Commonwealth, who is . . . deaf . . . , is enrolled, with the approval of the Department of Education, as a pupil in any of the Schools or institutions for the . . . deaf . . . , under the supervision of, subject to the review of or approved by the Department of Education, in accordance with standards and regulations promulgated by the Council of Basic Education, the school district in which such child is resident shall pay twenty-five per centum (25%) of the cost of tuition and maintenance of such child in such school or institution, as determined by the Department of Education; and the Commonwealth shall pay, out of funds appropriated to the department for special education, seventy-five per centum (75%) of the cost of their tuition and maintenance, as determined by the Department.

Such enrollment will only be approved if neither the local school district nor its supporting intermediate unit can provide an appropriate program for the child in question. *See* Section 1372(3) of the Code, 24 P.S. §13-1372(3); 22 Pa. Code §§13.11, .14(d), 171.13. *See also Levy v. Department of Education*, 41 Pa. Commonwealth Ct. 356, A.2d (1979). An appropriate program is defined in 22 Pa. Code §13.1 as "[a] program of education or training for exceptional school-aged persons which meets their individual needs as agreed to by a parent, school district, or intermediate unit person-

the District, petitioners, and representatives of the IU, the District declined petitioners' request, recommending Peter's continued placement at the IU.

On May 6, 1977, a hearing was held to review the District's recommendation. At the hearing, petitioner presented evidence that Peter required a total communication program[2] and that the District and IU were incapable of providing such a program. In addition, petitioners contended Peter should be undergoing vocational training instead of his current academic course of study. The District and IU presented testimony showing that its program was indeed a total communication program, that Peter was making progress, and that the IU was capable of preparing a satisfactory vocational program.[3] The District, however, was unable to provide more than a general outline as to the nature of the vocational program since the District had never been requested by petitioners to transfer Peter to such a program until after his enrollment at PSD.

The hearing examiner found that the IU provided a total communication program but that the proposed vocational program could not be evaluated until more fully developed. Therefore, she recommended the de-

nel; or as ordered by a hearing officer; or upon appeal as ordered by the Secretary of Education."

[2] As developed by the testimony, a total communication program is one that utilizes all possible methods to communicate with a hearing-impaired child, including, but not limited to, lipreading, fingerspelling, visual aids, amplification, sign language, and auditory training.

[3] The District presented testimony by Peter's teacher describing his courses, testimony concerning the District's and IU's efforts to provide a total communication environment, including the presence of certified teachers of the hearing-impaired and teacher-training courses in sign language, the results of achievement tests administered in 1976, and Peter's file from his former school in Missouri, complete with the results of a comprehensive psychological and educational assessment, which the District relied on to make Peter's initial placement.

velopment of a specific program for Peter, including an evaluation of the desirability of a vocational course of study, possible courses or areas of concentration, and psychological and educational testing. The program was to be presented to petitioners within a specified period for their approval. If petitioners felt the program was not appropriate, the hearing would be reconvened.

Both sides filed exceptions with the Secretary. Finding that Peter's placement at the IU was proper and that petitioners therefore were not entitled to tuition reimbursement, the Secretary dismissed all exceptions and adopted the hearing examiner's report. This appeal followed.

Petitioners contend that if there is no extant vocational program at IU No. 29 *presently* operational and suitable for Peter's needs, the IU placement is not appropriate and therefore petitioners should be entitled to tuition reimbursement for the cost of PSD. The issue, however, as we perceive it, is not the sufficiency of the IU's proposed vocational program but the appropriateness of the academic program Peter was enrolled in prior to his transfer to PSD. Moreover, the burden is on the petitioners to show the inappropriateness of this program. *See* 22 Pa. Code §13.32(15).[4] This petitioners attempted to do by showing, among other things,[5] that the IU lacked a vocational program tailored to Peter's needs. Petitioners failed, however, to present sufficient evidence that a vocational educa-

---

[4] At the time of the hearing, it was designated 22 Pa. Code §13.32(n). *See* 5 Pa. B. 1540. Section 13.32 was subsequently amended and renumbered in 7 Pa. B. 1636 to its present form in a manner not relevant here.

[5] As indicated, petitioners also attempted to show the IU's program was not one of total communication. Although petitioners did present evidence that a total communication program was best suited to Peter's needs, both the hearing examiner and the Secretary found, on substantial evidence, that such a program did exist at the IU.

tion was preferable to an academic education in view of Peter's specific abilities.[6] Without such evidence, any discussion as to the specific content of that program is premature. In addition, petitioners failed to establish that the District or IU could not provide an appropriate vocational program if given the opportunity. Indeed, petitioners' withdrawal of Peter from the IU and subsequent enrollment at PSD, before they had made known their desire for vocational training for Peter, effectively limited the District's or IU's ability to prepare an appropriate vocational program for Peter. *Cf. Welsch v. Department of Education,* 42 Pa. Commonwealth Ct. 41, 400 A.2d 235 (1979) (parents who enrolled their exceptional child in an out-of-state school on their own initiative were not entitled to tuition reimbursement because of their refusal to make their child available for evaluation to determine whether there is an appropriate in-state placement). Thus, the Secretary was justified in adopting the hearing examiner's report.

Petitioners also contend that the Secretary erred in making a finding on the adequacy of the IU program rather than remanding to allow the hearing examiner to make a finding on the issue. In essence, petitioner would have us consider the hearing examiner as the ultimate factfinder, with the Secretary only able to reverse if an error of law has been committed. Our reading of the Rules of Administrative Practice and Procedure, 1 Pa. Code §31.1 et seq., applicable to the Department of Education, *see* 22 Pa. Code §1.6, dis-

---

[6] Petitioners' evidence consisted of the recommendations of two experts, who had examined Peter, that he undergo vocational training, an opinion expressed by one of Peter's former teachers, and petitioners' own testimony. The primary thrust of this evidence was that vocational training was needed to prepare Peter for adult life. No evidence, however, was presented that Peter was capable of vocational training or that his current academic program was not properly preparing him to function as an adult.

closes no authority for this position. On the contrary, the hearing examiner is only a designee of the agency head, charged with the responsibility to conduct a hearing, hear evidence, make findings, and submit a *proposed report* to the agency head concerning the disposition of the case. *See* 1 Pa. Code §§35.185, .187, .205. The agency head then takes the final agency action. *See* 1 Pa. Code §35.226. Absent a requirement that the agency head is bound by the decision of the hearing examiner, the agency head is free to make his own determination and findings subject to review by this Court. *See* 2 Pa. C.S. §704.

What we have said concerning the Secretary's authority to make findings is also dispositive of petitioners' contention that the Secretary lacked authority to modify the hearing examiner's report regarding the development of a vocational program for Peter.

Finally, petitioners contend the order of the Secretary was untimely since it was not filed within 20 days of the filing of exceptions and answers to the hearing examiner's report, in accordance with an Appeals Procedure Guide distributed by the hearing examiner to the petitioners. While 22 Pa. Code §13.32(21) does require a *hearing examiner's* report to be filed within 20 days of the hearing, we are unaware of a similar regulation for the Secretary's decision either within the Department's own regulations or the Rules of Administrative Practice and Procedure. Even assuming that the Secretary did have some obligation to decide the matter within 20 days, petitioners have shown no prejudice as a result of the delay.[7]

---

[7] We have not considered the effect of either the Pennsylvania regulations at 22 Pa. Code §341.1 (effective October 1, 1977) or the Education for All Handicapped Children Act of 1975, Pub. L. No. 94-142, §1 et seq., 89 Stat. 775 (amending the Education of the Handicapped Act, 20 U.S.C. §1401 et seq.) and the regulations promulgated pursuant thereto at 45 C.F.R. §121a.1 et seq., on any of the issues

ORDER

AND Now, this 15th day of June, 1979, the order of the Secretary of Education, dated August 18, 1977, denying approval of the educational placement of Peter Fitz in the Pennsylvania School for the Deaf, is hereby affirmed.

presented here, since the relevant provisions were not applicable at the time this case arose.