**READING SCHOOL DISTRICT,**
Petitioner

v.

**DEPARTMENT OF EDUCATION,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 7, 2004.
Decided Aug. 6, 2004.

Richard L. Guida, Wyomissing, for petitioner.

Ann G. St. Ledger, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY President Judge COLINS.

Reading School District (District) appeals from the decision of the Secretary of Education (Secretary) affirming the Pennsylvania Department of Education's (Department) decision to identify thirteen schools as failing to achieve adequate yearly progress (AYP) under Section 6311(b)(2)(B) of the No Child Left Behind Act of 2001 (NCLB), 20 U.S.C. § 6311(b)(2)(B). We affirm the Secretary in this matter of first impression before the Court.

NCLB, which was signed into law by President George W. Bush on January 8, 2002, amended the Elementary and Secondary Education Act (ESEA) 20 U.S.C. §§ 6301–7938. In order to receive Title I funds through the state grant program of ESEA, a state must require local school districts to comply with the conditions set forth by the federal government for receipt of the funds. One such requirement is achieving AYP. With the passage of NCLB, which amends Title I of the ESEA, Pennsylvania is required to use statewide assessment as the basis for determining AYP.

Under NCLB, a state must begin conducting annual testing of students in grade levels three through eight in the subjects of mathematics and reading by the school year that begins in 2005. This testing has to be statewide and meet state academic standards. 20 U.S.C. § 6311(b)(2)(A). Under NCLB, all students must score in the "proficient" level on state tests by the 2013–14 school year. 20 U.S.C. § 6311(b)(2)(F). In Pennsylvania, the program used for statewide assessment is the Pennsylvania System of State Assessment (PSSA).

In order to achieve AYP under the PSSA, a school must meet certain designated achievement levels each year. For the 2003–04 school year, the PSSA required that 35% of a school's students had to be proficient in mathematics and 45% in reading. These achievement levels apply to the student population as a whole and to each of four demographic subgroups designated under NCLB. 20 U.S.C. § 6311(b)(2)(C)(v)(II)(aa-dd). The designated subgroups are: economically disadvantaged students, students from major racial and ethnic groups, students with disabilities, and students with limited English proficiency (LEP). Currently, the PSSA is administered only in English. There is no native language testing at this time. If a native language test is available, a student can take that version of the test for up to three years. After three years, the student must take the assessment in English.

A school district must account for the scores of each subgroup if the number of students in that subgroup exceeds a certain state-designated number. This is called the "N" number. In Pennsylvania, the "N" number is 40. This means that if a school in Pennsylvania has a subgroup with more than 40 students, the school must separate out the scores of those students, and those students as a group must meet AYP. For example, if a school has 45

students who are limited English proficiency, those 45 students must be evaluated separately and must make AYP as a group in order for the school as a whole to achieve AYP. NCLB requires that the states develop the "N" number using sound statistical methodology. 34 C.F.R. § 200.7(a)(2).[1] The Department's original "N" number was rejected by the federal government. After discussions with the federal government and more computer modeling, the current "N" number was selected and approved by the federal government.

If a school fails to make AYP it is placed on a warning list. If a school fails to make AYP for two years, it is placed in the first phase of school improvement (School Improvement I under the PSSA). If a school is in School Improvement I, it must be offered technical assistance, 20 U.S.C. 6316(b)(4)(B), and the school must offer school choice pursuant to NCLB, that is, offer its students the choice to attend other public schools, 20 U.S.C. § 6316(b)(1)(E)(i). If the school continues to fail, it becomes subject to outside corrective measures such as reopening the school as a public charter school, replacing school staff, privatization, or state control. 20 U.S.C. § 6316(b)(8).

In January of 2003, the Department notified the District that thirteen of its twenty public schools failed to achieve AYP. Seven of those schools were placed on the warning list. The remaining six schools were Title I schools, and they were placed in School Improvement I. The District challenged this decision in an appeal to the Secretary of Education on three grounds: 1) The PSSA is discriminatory because it does not provide native language testing; 2) The Department's "N" number is arbitrary and was not developed using appropriate statistical methodology; and 3) The Department failed to provide adequate technical assistance to the District for school improvement.

The Secretary concluded that 20 U.S.C. § 6311(b)(3)(C)(ix)(III) does not require the Commonwealth to provide native language testing based on the relevant statutory language that the states should provide "to the extent practicable, assessments in the language and form most likely to yield accurate data...." 20 U.S.C. § 6311(b)(3)(C)(ix)(III). The Secretary found credible the testimony of Mr. John Weiss, an employee in the Department's assessment division, relating to the impracticability of providing native language testing at that time. The Secretary found credible the testimony of Dr. Leonard Lock, also an employee of the Department's assessment division, relating to the development of the "N" number. The Secretary determined that the Department's research and computer-modeling of different "N" numbers satisfied appropriate statistical methodology. The Secretary determined that the Department provided sufficient technical assistance to the District and that the Department will make more technical assistance available in the future. The Secretary further determined that the question of whether the Department has provided sufficient technical assistance had no bearing on the Department's duty to identify schools as in need of improvement, and concluded that that aspect of the District's challenge was not relevant.

The District asks us to determine: 1) Whether the Department has provided adequate technical assistance under the requirements of NCLB; 2) Whether the

---

**1.** Based on sound statistical methodology, a State must determine and justify in its State plan the minimum number of students sufficient to yield statistically reliable information for each purpose for which disaggregated data are used.

Department's failure to provide native language testing is discriminatory and does not comply with NCLB and 3) Whether the Department's "N" number was based on sound statistical methodology or if it was determined arbitrarily. Our standard of review is limited to determining whether constitutional rights have been violated, errors of law have been committed, or whether the decision is not supported by substantial evidence. 2 Pa.C.S. § 704; *Carbondale Area School District v. Fell Charter School*, 829 A.2d 400 (Pa.Cmwlth. 2003).

## I. Procedural History

After the Department notified the District that the District's schools would be placed under warning or in school improvement, the District appealed the findings of the Department's Bureau of Performance Accountability and Reporting to the Secretary. Pursuant to the Department's procedures, the appeals received executive review without hearing on two separate occasions. On both occasions the District's appeal was denied. On October 15, 2003, the Department conducted an appeal hearing, which was the last appellate step for the Department to consider the District's appeal. The Secretary appointed Patricia Fullerton as the hearing officer to conduct the hearing. As the hearing officer, Ms. Fullerton's responsibilities included hearing the arguments, taking testimony, and certifying the record to the Secretary, so that the Secretary could render a decision. We recognize that the Secretary has the authority to designate a hearing officer to conduct a hearing, hear evidence, make findings, and submit a proposed report to the Secretary concerning the disposition of a case. 1 Pa.Code §§ 35.185, .187, and .205, *see also Fitz v. Intermediate Unit 29 and Blue Mountain School District*, 43 Pa.Cmwlth. 370, 403 A.2d 138 (1979). However, in the case *sub judice*, there was no proposed report certified in the record. 1 Pa.Code § 35.201.

Subsequent to the Secretary rendering her decision in which she affirmed the identification of the District's schools as either in warning status or in school improvement, the District appealed the Secretary's decision to this Court. We have jurisdiction to hear this appeal pursuant to 42 Pa.C.S. § 763 giving jurisdiction to this Court to hear appeals from final orders of government agencies. As such we will apply the same standard of review applicable to all administrative agency appeals. *See* 2 Pa.C.S. § 704.

## II. Adequacy of Technical Support

The District argues that its schools should be removed from the improvement list because the Department failed to provide necessary, adequate technical assistance. The District contends that the Department's decision to impose school improvement sanctions on the District is unreasonable because of the District's extremely impoverished nature and the Department's failure to distribute the federal funding it received for school improvement under NCLB. The District's position is that it is forced to spend thousands of dollars it does not have, and, without further funding, it will not be able to meet the school improvement requirements placed upon it by having its schools identified as failing to meet AYP.

NCLB requires the Department to offer technical assistance to any school that is identified as in need of improvement. Under 20 U.S.C. § 6316(b)(4)(B), technical assistance includes assistance in analyzing assessment data, identifying and addressing problems in instruction, identifying and implementing professional development, instructional strategies, and assistance in analyzing and revising the school's budget

so that school resources can be more effectively allocated.[2]

While the District is one of the poorest school districts in Pennsylvania and the burden on it may be onerous, the District is receiving some technical assistance from the Department in the form of workshops, which the District's personnel have attended and plan to attend in the future. The Department provided resources via its website that included school-improvement plan templates and training materials. Further, the Department plans to make more technical assistance available in the future. Ongoing technical assistance is also available through federal programs, and more technical assistance and funding will be made available when the Governor's education budget is passed.

■ Additionally, NCLB does not require that the technical assistance be provided all at once. According to 20 U.S.C. 6316(b)(4)(A), the local educational agency shall ensure the provision of technical assistance as the school develops and implements the school plan throughout the plan's duration. The statutory language suggests an ongoing process of technical assistance, and as such the Department is not required to offer all of the technical assistance called for under the act at the moment a school is identified for school improvement. The record establishes that the Department intends to continue to provide the District with technical assistance as more funding becomes available with the passage of the Governor's education budget.

■ The District maintains that it cannot afford to fund these improvements, but the District has not presented any evidence demonstrating that the funds currently available to it are not adequate to pay for its school improvement measures. The District received over $6,000,000 in Title I funds last year, and it has already implemented some of the requirements called for under School Improvement I. It has extended the school day and the school year with a summer program. The District has also begun to offer school choice. Furthermore, the Secretary determined that the existence or non-existence of technical assistance has no bearing on the correct identification of schools failing to achieve AYP. We agree. The adequacy of the Department's technical assistance does not affect whether the District's schools were identified correctly as in need of improvement. Technical assistance is a consequence of the identification, not a condition precedent to that identification, and the Department's obligation to provide technical assistance does not commence until after schools are identified as in need of improvement. Finally, the District does

---

2. § 6316(b)(4)(B) provides:

Such technical assistance: (i) shall include assistance in analyzing data from the assessments required under section 6311(b)(3) of this title, and other examples of student work, to identify and address problems in instruction, and problems if any, in implementing the parental involvement requirements described in section 6318 of this title, the professional development requirements described in section 6319 of this title, and the responsibilities of the school and local educational agency under the school plan, and to identify and address solutions to such problems; (ii) shall include assistance in identifying and implementing professional development, instructional strategies, and methods of instruction that are based on scientifically based research and that have proven effective in addressing the specific instructional issues that caused the school to be identified for school improvement; (iii) shall include assistance in analyzing and revising the school's budget so that the school's resources are more effectively allocated to the activities most likely to increase student academic achievement and to remove the school from school improvement status.

not cite any statutory language that requires or directs the Department to pay for the District's improvement measures.

### III. Native Language Testing

■■ The District next argues that its schools should be removed from the school improvement and warning statuses because the Department's failure to provide native language testing does not comport with NCLB. However, NCLB states only that the Department must provide *"to the extent practicable,* assessments in the language and form most likely to yield accurate data...." 20 U.S.C. § 6311(b)(3)(C)(ix)(III) (emphasis added).[3] The clarifying language makes clear that native language testing is not mandatory, but it should be provided to the extent that it is practicable for the state to do so.

The record supports the Secretary's conclusion that it is not practicable for the Department to provide native language testing at this time. In order to provide such testing, the Department would need to determine the languages for which such testing would be feasible. Currently, the Department is in the process of determining from the 125 native languages used in Pennsylvania schools those for which it would be feasible to offer the assessment. Once the Department determines which native languages to use, it will have to develop a test and have it field tested. According to the credited testimony, it will take two or three years to develop a valid assessment in any language, and the costs involved in that development would exceed the costs of the existing assessments already offered. The Department plans to make some native language testing avail-

able by 2005. The Secretary determined, and we agree, that it is not practicable at this time to provide native language testing.

### IV. The "N" Number

■ The District contends that the Department's selection of the "N" number was done arbitrarily and not based on sound statistical methodology. We disagree. NCLB requires the states to determine and justify in their state plans the minimum number of students that is sufficient to yield statistically reliable information. The Secretary concluded that the Department made several computer runs using different group sizes and looked at school data over a span of years. The Department analyzed the statistical patterns, using appropriate parameters, to select a number that would help to identify correctly the schools in need of further support. Furthermore, the District offered no evidence in support of its contention, nor did it offer a better statistical analysis or show that a different "N" number was more suitable or yielded better results.

In *Carbondale Area School District v. Fell Charter School,* 829 A.2d 400, 404 (Pa.Cmwlth.2003), this Court stated, "It is irrelevant whether the record contains evidence to support findings other than those made by the factfinder; the critical inquiry is whether there is evidence to support the findings actually made." The record indicates that the Department has researched the development of native language testing and plans to offer some native language testing by 2005. The record indicates that

---

**3.** 20 U.S.C. § 6311(b)(6) provides that:

Each state plan shall identify the languages other than English that are present in the participating student population and indicate the languages for which yearly student academic assessments are not avail-

able and are needed. The State shall make every effort to develop such assessments and may request assistance from the Secretary if linguistically accessible academic assessment measures are needed.

computer modeling was used to test different "N" numbers, taking into account the various concerns in minimizing false positives, that technical assistance was offered to the District, that the District participated in what was offered, and that more technical assistance will be made available in the future.

 Essentially, the District is challenging aspects of NCLB that are within the purview of the Department's expertise and discretion, and this Court will not disturb the exercise of such discretion unless it has been abused. *Avon Grove School District Board of Directors v. Department of Education,* 31 Pa.Cmwlth. 89, 375 A.2d 851 (1977).[4] Furthermore, we will not substitute our discretion for administrative discretion even if we could have come to a different conclusion than that of the agency. *Homer v. Department of Education,* 73 Pa.Cmwlth. 623, 458 A.2d 1059 (1983). We adopt the same position here. We are not educators nor is it our place to substitute our judgment for those of learned educators who have experience and knowledge in such matters. We must proceed with caution when an administrative body is interpreting its own regulations in reaching a decision and we must defer to the agency's interpretation of those regulations in most instances. *Id.* Although NCLB is not the Department's own regulation, it is a regulation within the Secretary's educational sphere and expertise. As such, the Secretary has the experience and knowledge to make such decisions. Accordingly, here the Secretary has exercised her discretion regarding a matter within her purview of special expertise, and it is not this Court's place to disturb that finding since there is supporting evidence on the record to support that finding and no abuse of discretion can be found.

For the reasons set forth above, the order of the Secretary of Education is affirmed.

### *ORDER*

**AND NOW,** this 6th day of August 2004, the order of the Secretary of the Department of Education in the above-captioned matter is hereby affirmed.

4. See also: *Homer v. Department of Education,* 73 Pa.Cmwlth. 623, 458 A.2d 1059 (1983); *Norfolk and Western Railway Co. v. Pennsylvania Public Utility Commission,* 489 Pa. 109, 413 A.2d 1037 (1980).