STATE OF NEW JERSEY BOARD OF ARCHITECTS, PLAINTIFF, v. GEORGE NORTH, DEFENDANT.

Superior Court of New Jersey
Chancery Division Cape May County

Decided June 8, 1984.

*Peter A. Greene* for plaintiff (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney).

*Martin L. Pagliughi* for defendant (*Adamo & Pagliughi*, attorneys).

MILLER, EDWARD S., J.S.C.

This is an action brought by the New Jersey State Board of Architects pursuant to *N.J.S.A.* 45:3–10 to penalize a New Jersey licensed professional engineer for the unauthorized prac-

tice of architecture and to enjoin the engineer from the future practice of architecture.

A plenary trial has been held and the court finds that the following facts have been established. Defendant George North is licensed in this State as a professional engineer and does business in Vineland, New Jersey. He is not a licensed architect. In or around October 1981, after receiving a preliminary floor plan and elevation from a contractor (not a party to this action), defendant gathered the necessary structural data, drew up specifications and prepared drawings for the construction of a two-story duplex home to be built on pilings in Ocean City, New Jersey. Three drawings were prepared: one consisting of a floor plan of the duplex and a plan for the pilings, another consisting of front, rear and side elevations and a third consisting of wall and roof construction details and plumbing details. Two of the drawings contain lists of specifications for the types, sizes, strengths, *etc.* of the materials to be used in the construction.

The board of architects contends that in doing this work, defendant violated *N.J.S.A.* 45:3–10, which states:

> Any person who shall pursue the practice of architecture in this State, or shall engage in this State in the business of preparing plans, specifications and preliminary data for the erection or alteration of any building, except buildings designed by licensed professional engineers incidental or supplemental to engineering projects ... [without a license to practice architecture shall be liable to a penalty]....

The "practice of architecture" is not defined in the statute. The definition is provided in *N.J.A.C.* 13:27–2.2(a):

> The practice of architecture is defined as the professional activities of the registered architect. This includes analysis, calculations, research, graphic presentation, literary expression, and advice concerning and the preparation of necessary documents for the design and construction of buildings and their related environment, with the primary purpose of providing space for human use whether interior or exterior, permanent or temporary, including, but not limited to buildings and/or structures for social, political and economic service; in fulfilling domestic, religious, educational, recreational, institutional, memorial, financial, commercial, industrial and governmental needs and the like.

It is clear that under the statute—subject to certain exceptions, one of which is pertinent and is discussed below—a person can be penalized for either of two courses of conduct: pursuing "the practice of architecture," as defined by *N.J.A.C.* 13:27–2.2(a), *or* engaging in "the business of preparing plans, specifications and preliminary data for the erection or alteration of any building ...." (In either case, any single act or transaction is sufficient basis for a penalty. *N.J.S.A.* 45:3–10.) The board of architects is relying on the latter formulation in its action against defendant.

In defense of the action defendant makes essentially three arguments. First, he argues that the work he did in connection with the Ocean City duplex was structural engineering, not architecture. Second, he argues that if there is doubt as to the nature of the work done, that doubt indicates that the two professional fields and the skills possessed by members of each have become so closely related that it is impossible to establish a line of demarcation. He seems to be arguing that, as a result of this, the statutory and code sections defining the two areas of practice should be interpreted in a way that would recognize a virtual merging of the two and not allow any penalty for an engineer doing architectural work. Defendant's last argument is that even if the two professions are not regarded as merged and his work on the duplex does fall within the type of work covered by *N.J.S.A.* 45:3–10, the duplex is an "engineering project" under the statute and therefore any architectural services performed were permissible as being "incidental or supplemental to" such a project.

Taking the arguments in sequence, the court turns to defendant's first contention. In testimony at trial defendant contended that since a preliminary floor layout and elevation was prepared by someone else and supplied to him, his work in subsequently preparing the construction drawings and specifications was purely engineering. The architecture practiced in connection with the duplex, he contended, was practiced by the person who did the preliminary work not by him.

The court does not agree. Though a preliminary floor plan and elevation was supplied to defendant, the court cannot avoid the conclusion that the work he did falls within the statutory wording "prepar[ation] of plans, specifications and preliminary data for the erection ... [of a building]." Defendant—and defendant alone—gathered the structural data and prepared the structural specifications for the construction of the duplex. His work culminated in three detailed drawings which clearly qualify as "plans." Thus, unless his conduct falls within the penalty exception for licensed engineers who design buildings "incidental or supplemental to engineering projects," defendant is liable to be penalized. That exception will be considered below. Before turning to it, however, defendant's second argument must be considered.

As noted, defendant's second argument is that the court should interpret *N.J.S.A.* 45:3–10 to exempt licensed engineers from penalty for the performance of *any* architectural services, not just for design of buildings incidental or supplemental to engineering projects.

In support of this position defendant offered testimony at trial that established considerable similarity in the training and functions of architects and engineers who engage in structural engineering. (Testimony introduced by the board of architects indicated that engineers lack the training in the aesthetic side of building design that is an integral part of architects' training.)

Defendant also offered an Alabama Supreme Court case in which that court, reviewing the two professions, came to the conclusion that "the functions of the two professions so overlap that neither can be satisfactorily defined in a way to draw a clear line of demarcation between the two." *State Board of Registration of Architects v. Jones*, 289 *Ala.* 353, 267 *So.*2d 427, 429 (1972). In reviewing a statutory scheme for regulation of architects and engineers which is similar, but not identical, to that of New Jersey, the Alabama court concluded that its

legislature had not succeeded in establishing a clear statutory division between the two areas of practice. In light of this, it affirmed a lower court ruling which held that a licensed engineer, who had not held himself out as an architect, had not engaged in the unauthorized practice of architecture when he designed a number of buildings, including churches, medical offices and stores. *Id.*, 267 *So.*2d at 432.

While this court finds the testimony and Alabama case offered by defendant to be illustrative of the similarity of the two professions and of the difficulty in drafting a statutory scheme which clearly differentiates the scope of each practice,[1] *see also* 82 *A.L.R.*2d 1013, New Jersey courts, though recognizing the same troublesome similarity, have rejected the notion that the two professions have become indistinguishable.

In *Gionti v. Crown Motor Freight Co.*, 128 *N.J.L.* 407 (E. & A.1942), where a licensed engineer was denied recovery on a contract for architectural services, the Court of Errors and Appeals stated that:

It is argued that as a result of the progress made in the professions of the practice of architecture and engineering, many "overlapping functions and activities" have arisen between them, that the result has been that all "distinctions" between them have "passed away," and, therefore, we should construe the respective statutes relating to these professions accordingly. However interrelated the professions and the statutes relating to them may be, the legislature has made and maintained a marked cleavage between them. It is beyond our power to thwart that clear legislative cleavage. [128 *N.J.L.* at 411]

*See also Design-4 v. Masen Mountainside Inn, Inc.*, 148 *N.J. Super.* 290 (App.Div.1977) (without addressing the statutory

---

[1]Note, for example, that *N.J.S.A.* 52:32–3 and *N.J.S.A.* 40:55–52 require state and municipal officials to accept only building plans sealed by a licensed architect *or* a licensed engineer, seemingly suggesting that either may design state and municipal buildings. The Attorney General has interpreted these sections in two formal opinions, stating that they do not broaden the scope of engineering practice but only permit an engineer to seal plans for buildings he has designed incidental or supplemental to an engineering project. Att'y. Gen. F.O.1949, No. 113; Att'y. Gen. F.O.1955, No. 25. *See also, N.J.A.C.* 5:23–2.-15(e)(1)(vii) (permitting architect's or engineer's seal to appear on plans submitted with construction permit application.)

dividing line between architecture and engineering, the court relied on *Gionti* in refusing to enforce a contract for architectural services in a suit brought by a company whose design staff did not include an architect, but which had an engineer available to review its building design plans).

Given the holding in *Gionti*, this court is certainly not in a position to interpret *N.J.S.A.* 45:3–10 as if there were no statutory dividing line between the two professions. The key question in this case is thus clearly not *whether* under New Jersey law there is a dividing line—*Gionti* clearly indicates that the Legislature intended that there be one—the question is: *where* is the dividing line and did defendant's conduct carry him over it?

A general idea of where the dividing line was meant to be can be gotten from a comparison of *N.J.S.A.* 45:3–10, and the engineer's licensing statute *N.J.S.A.* 45:8–28(b). As noted above, the former exempts licensed engineers from penalty when they design buildings which are incidental or supplemental to engineering projects.[2] The latter permits engineers to engage in "planning" and "design" work "in connection with any public or private engineering or industrial project." From a comparison of these statutes, it is at least clear that engineers may engage in conduct that would otherwise qualify as architecture so long as it is done in connection with an engineering project. (No one in this matter contends that the duplex should be considered an "industrial project," so that term need not be addressed.)

It is on this "engineering project" exception that defendant's third and final argument rests; he contends that the duplex at

---

[2]Note that if a penalty action were brought based only upon the "practice of architecture" course of conduct, as defined by *N.J.A.C.* 13:27–2.2(a), technically there would be no "engineering project" exemption since the administrative code definition doesn't contain such exemption language. That definition, however, should reasonably be read *in pari materia* with the statute and thus would also be interpreted to contain the exemption.

issue is an engineering project. (Although the exception is for buildings designed "incidental or supplemental to" an engineering project, it is clear that if the *duplex itself* is an engineering project, defendant may design it.) This argument brings into focus the problem of establishing more precisely where the dividing line between architecture and engineering is located in our statutory scheme and the problems inherent in penalizing and enjoining conduct that falls close to the line.

Nowhere in either *N.J.S.A.* 45:3–10 or in the engineers' statute, *N.J.S.A.* 45:8–27 *et seq.*, is the term "engineering project" defined. Nor is any definition given in the administrative code or in our case law.

Defendant contends that the Ocean City duplex qualifies as an engineering project because, from the pilings to the roof, it is largely composed of engineered sub-structures, *i.e.*, elements whose design requires the application of engineering principles.

The state board of architects, while conceding that individual elements of the duplex were engineered, maintains nevertheless that it is not an engineering project under the statute. The board contends that the purpose for which a structure is erected should be the determinative factor in deciding if a given structure qualifies as an engineering project, not whether it contains engineered elements. It argues that buildings meant for human habitation, such as the duplex in question here, are clearly not engineering projects; it offered the testimony of the New Jersey state architect (who is both a licensed architect and a licensed engineer) and the president of the New Jersey Society of Architects for the proposition that projects such as bridges, dams, factories, *etc.* were the types of projects meant to be encompassed by the term "engineering project."

In further support of its position that the Ocean City duplex is not the type of building that may be designed by an engineer, under the engineering project exception, the board points to the garage/office building project in *Gionti, supra,* and to the motel addition project in *Design-4, supra.* The board argues

that by refusing to enforce contracts for the design of those projects on grounds of illegality (the former having been designed by an engineer, the latter designed with oversight by an engineer available), the courts have clearly established such projects as off limits to engineers. (Though neither opinion addresses the term "engineering project," a review of the briefs in those cases indicates that the engineering project argument was clearly offered to the court in *Gionti;* it is not clear if the *Design-4* court heard such an argument.)

The board reasons that if the garage and office building in *Gionti* were not found to be engineering projects—given the fact that those structures are closer in nature than the duplex to, for example, a factory, which all parties agree is an engineering project—then surely the duplex should not be found to qualify as an engineering project.

The court finds such reasoning to be valid. Thus, while the statutory scheme does not define the term "engineering project" and thereby establish clear limits on the engineering project exception, the case law does establish a line which at least controls this case.

█ Defendant's conduct in designing the duplex is outside the exception as limited by *Gionti* and he is therefore liable to a penalty. *N.J.S.A.* 45:3–10, as modified as to penalties by *N.J. S.A.* 45:1–25, –26, calls for a penalty of not more than $2500 for a first offense. Frankly, by way of dictum, the court, were it at liberty to do so and not constrained by earlier reported opinions, would go the other way. There are so many references in the administrative code to the signing of these types of documents by engineers that it could well be argued that the earlier Appellate Division cases have been so eroded by the passage of time and the change in the state of the art that they are no longer viable precedents. *Cf. Bortz v. Rammel,* 151 *N.J.Super.* 312 (App.Div.1977). Moreover, this court is persuaded that since the controlling differences between architect and engineer seem to be that of aesthetics and space utilization,

such differences appear to be more apparent than real. The best analysis of the situation is the reasoning in the Alabama case hereinbefore cited, *Jones, supra.* This case is so close to the instant case that were it not for *Gionti* and *Design-4, supra,* this court would hold for defendant. However, as Chief Justice Weintraub so bluntly put it: "Trial courts are privileged to disagree with the pronouncements of appellate courts; the privilege does not extend to non-compliance." *Reinauer v. Paramus,* 34 *N.J.* 406, 415 (1961).

Common sense tells us that if an architect must sign each application in cases of this kind the work will simply never get done. At the oral argument the board of architects contended that an engineer who copies plans and specifications done by any resident architect including Frank Lloyd Wright and signs them would violate the statute. This appears to border on the impractical and to fly in the face of current everyday practice. However despite the refreshing holding in *Bortz v. Rammel, supra,* this Court feels that such a change should be made at the appellate or legislative level and not at the trial level. Such a review would appear to be in the best interest of the practical administration of justice. Thus, rather than hold *Gionti* and *Design-4* outmoded, as in *Bortz,* the court will follow them.

In light of the absence of a statutory definition of the term "engineering project" and defendant's good faith belief that the duplex qualified as such a project, only a nominal penalty of $25 is warranted. Defendant is enjoined from designing such duplexes and other dwellings in the future; given the *Gionti* holding he may also fairly be enjoined from the design of garages or office buildings. Beyond this, it is the Legislature's province to establish a clearer line separating permissible conduct by engineers under *N.J.S.A.* 45:3–10 from conduct which can result in heavy fines. In light of the fact—undisputed by the board of architects—that structural

engineers are fully capable of designing *safe* buildings, the Legislature may wish to review the matter.

The board of architects should submit an appropriate order.